**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA,**

vs.                                            Case No. 4:94cr4045-WS

**BRADY LAVICK ADAMS,**

    **Defendant.**

                                       /

## REPORT AND RECOMMENDATION TO DENY DNA TESTING

This cause is before the court on Defendant's motion requesting DNA testing. Doc. 159. Pursuant to court order, doc. 161, the Government filed an opposition to the motion. Doc. 163. A copy of the answer brief on appeal was also submitted by the Government. Doc. 163, attachment (filed as doc. 163-1 in ECF) (Electronic Case Filing). Defendant filed a traverse to the opposition. Doc. 164.

This is an old case, and the file was sent to federal archives years ago. The judgment was affirmed in 1996, and the first document scanned into ECF (thus available electronically) was filed in 1998. The court relies on the Government's answer

brief (doc. 163-1), the PSR (sealed doc. 153), and the court docket for the factual history.

Pursuant to 18 U.S.C. § 3600, Defendant now seeks DNA testing of evidence collected from the motel room where the alleged sexual assault occurred, and the "rape kit" examination at the hospital. Doc. 159, p. 2.

Defendant was not convicted of sexual battery, though apparently there was a sexual battery in the course of committing the offense. Defendant was convicted by a jury of kidnapping, carrying a firearm during a crime of violence (*i.e.,* the kidnapping), and possession of a firearm by a convicted felon. He was sentenced to life, with terms of 60 months and 360 months, to be served consecutively and concurrently, respectively, to the life sentence.

The charges arose out of Defendant forcibly taking his wife (hereafter the victim) from her cousin's apartment in Georgia the morning of August 1, 1994. He smashed a glass door, went into the apartment, held a gun to her cousin's head, threatening to shoot if his wife did not come out. He turned the gun on his wife and tried to force her into his car. She resisted and he hit her in the face with the firearm, and then shot her as she attempted to flee. After the bullet hit and she fell to the ground, Defendant picked her up and put her in the car. He drove her to a motel in Florida. The victim was bleeding and vomiting. Defendant eventually allowed her to telephone relatives, and authorities located them by these calls. Agents of the FBI negotiated with Defendant by telephone from around midnight of August 1 until 12:15 p.m. on August 2, when Defendant allowed the victim to leave the motel room and he surrendered.

During these conversations from the motel, Defendant told agents he had a gun and would kill the victim if they tried to come in, and the victim confirmed this. He also

admitted (in talking to agents) to the shooting but said it was accidental. The gun was left on a table in the motel room, and it was determined that the slug later recovered from the victim's body came from that firearm. The slug hit the victim's hip bone and went into her abdominal cavity, and (due to the long delay in obtaining treatment) resulted in severe infection and bleeding. The bedding at the motel was stained with bile and blood. The victim testified that Defendant twice attempted sexual relations with her in the motel, that he stopped the first time but was successful the second time.

Defendant testified in his defense that the gun went off accidentally when his wife grabbed at it, that he panicked, put her in the car, and drove away. He said once she was in the car with him she was willing to go and like her "old self" with him, and he did not realize she was seriously injured. He said he stopped at the motel because she asked him to. He thought they were reconciled and tried to have sex once but did not succeed. Defendant said he was afraid to release her because he was afraid the FBI would kill him.

The Government responds to the current motion by stating that "[r]ecords exist showing the seizure and chain of custody for the firearm, slug, recordings [presumably of the conversations with FBI], documents, etc., but nothing concerning blood, semen, a rape kit, etc. The lack of such documentation indicates that no such evidence was ever collected." Doc. 163, p. 5.[1] The Government notes that "Defendant admitted attempting to have sex with his bleeding, vomiting wife. Whether he was successful in this attempt was irrelevant to the judge and jurors' assessment of the wife's credibility,"

---

[1] It is p. 5 of the response but labeled at the bottom as p. 9.

Case No. 4:94cr4045-WS

and that any weakness in her testimony could be attributed to her life threatening condition. *Id.*, p. 6. It is argued that none of the counts of conviction required proof that of sexual intercourse (or attempt) with the victim, and the assault did not impact the career offender guidelines. *Id.*, p. 5.

Defendant responds that, if the Government is correct that the evidence was not collected, this failure creates a "shroud of suspicion," and a hearing should be held "to determine why protocol was not followed" in this case. Doc. 164, , pp. 1-2. He disputes the assertion that he was sentenced as a career offender.[2]

Section 3600 provides that "[u]pon written motion by an individual under a sentence of imprisonment or death pursuant to a conviction for a Federal offense (referred to in this section as the 'applicant'), the court that entered the judgment of conviction shall order DNA testing of specific evidence if the court finds that *all*" of the ten factors listed in the statute apply. § 3600(a) and (a)(1)-(10) (emphasis added). Without delving into the intricacies of each requirement, it is clear Defendant cannot show that all ten apply. The evidence must have been "secured in relation to the investigation or prosecution of the" offense for which he is currently in prison, and be "in the possession of the Government." §§ 3600(a)(2), (1)(A), and (4). Here the evidence had nothing to do with the offenses of conviction, was not secured by the Government, and (even if it had been) the Government does not have it. Moreover, identity was never an issue at trial, and that is another requisite for this motion. *See* § 3600(a)(7)

---

[2] *See* doc. 133 (Government's opposition to motion for modification of sentence) (discussing sentencing); doc. 134 (denying motion for modification "for the reasons well-explained by the government" in opposition). Defendant was found to be a career offender, but this made no difference to his sentence. Doc. 133, p. 4.

(requiring that "[i]f the applicant was convicted following a trial, the identity of the perpetrator was at issue in the trial.").

It is noted that the statute does not "affect the circumstances under which a person may obtain DNA testing or post-conviction relief under any other law," and does not "provide a basis for relief in any Federal habeas corpus proceeding." § 3600(h). Defendant's motion is not construed as an attempt to file a motion pursuant to 28 U.S.C. § 2255. § 3600(h)(3) (the motion "shall not be considered to be a motion under section 2255 for purposes of determining whether the motion or any other motion is a second or successive motion under section 2255."). Defendant has already attempted, unsuccessfully, to file a § 2255 motion and was denied authorization for filing a second or successive motion. Docs. 75, 85 (denying § 2255 motion, reconsideration), and 128 (denying authorization). *See also* doc. 163, p. 6 (noting Defendant's other various attempts to obtain relief).

It is therefore respectfully **RECOMMENDED** that the motion for DNA testing (doc. 159) be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on February 1, 2010.

    S/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**